Good morning, Your Honors. May it please the Court, my name is Joshua Brubner on behalf of the Petitioner. This is an immigration case, a petition for review from the Board of Immigration Appeals, affirming and adopting the decision of an immigration judge denying Petitioner's applications for asylum, withholding removal, and protection under the Convention Against Torture. The critical facts in this case are as follows. Petitioner is a citizen of China who claims to have a fear of persecution based on China's one-child policy, namely forcible sterilization. There are two issues in this case. The first issue is whether substantial evidence supports the immigration judge's and the BIA's finding that both the petitioner's testimony and his corroborating evidence are incredible. And the second issue is whether the Board engaged in impermissible fact-finding. We have three positions. Number one, the plaintiff's testimony is credible, and both the IJ's and the Board's rationale for discrediting the testimony is unreasonable. Number two, that the petitioner's supporting documents are credible, and the IJ's rationale for discrediting the documents is directly contrary to this Court's precedent. And as well, the BIA's rationale is unreasonable. And lastly, that the BIA engaged in impermissible fact-finding in analyzing and adding facts to petitioner's supporting documents. The standard of review is for factual findings is the substantial evidence test, reasonable adjudicator standard, and of course for legal issues it is de novo. And we are requesting that the Court grant the petition. The procedural facts are as follows. January 2009, petitioner entered the United States without inspection. In February 2009, the Department of Homeland Security did a credible fear interview. Credible fear was established, and a notice to appear in court was issued. In May 2009, the petitioner appeared before an immigration judge. All allegations were admitted, and the charge of removability was sustained. In May of 2011, there was a merits hearing, where the applications were denied. An appeal to the BIA followed, and in July 2012, the BIA dismissed the appeal. And of course, this appeal follows. The facts in regards to the merits, these are the alleged facts. The petitioner is a 26-year-old citizen of the PRC. He entered without inspection in January 2009. Petitioner is married to Chen, also a citizen of the PRC, his wife. They have one child together. On November 26, 2008, petitioner and Chen were advised that Chen was pregnant with their second child. On November 25, 2008, three days later, five residents of petitioner and Chen advised them that they had violated the one-child policy and that they would have to take Chen. An argument and physical confrontation ensued. Petitioner was kicked, beaten, and his wife was taken away. On November 26, the next day, Chen returned and told the petitioner that they forced an abortion upon her. On November 28, two days later, Chen was taken again for sterilization, but released because the procedure was not completed. That same day, the petitioner came home and he found a notice that he must report for sterilization on November 30, as Chen could not undergo sterilization due to a health issue. On November 30, 2008, two days later, the petitioner fled his village with the help of a smuggler. And then, of course, in January 2009, he entered the United States. Lastly, in June of 2009, there was a notice issued to petitioner's family indicating he must appear for violating the one-child policy. Getting into the argument now, we're going to discuss the credible testimony. And our argument is that the testimony was credible. The first issue that BIA had was the assault. Namely, they said the petitioner's testimony regarding the assault was inconsistent because when he was first asked by the immigration judge, he did not indicate that he was assaulted. However, the record clearly shows that the immigration judge asked him, have you ever been arrested? And then the immigration judge asked him, how long were you detained? What were you doing? Was your wife taken away? This is all found at the Administrative Record 7679. The point is, he was not asked a question by the immigration judge, were you assaulted? Or was he asking any question that would lead to such a response? On direct exam, after the immigration judge's questions, he was asked an open-ended question, please describe the events. And that's found at AR 87. At that point, he indicated he was assaulted. And of course, the credible fear interview and the affidavit, he also indicated he was assaulted as well. So we never gave inconsistent testimony, he was just never asked a proper question by the immigration judge. The second issue that the Board of Immigration Appeals has is that he did not give abortion, he did not give details about his wife's actual abortion. But on the contrary, on AR Administrative Record 7879-98100, he specifically said his wife was taken to the hospital, he gave the date, he indicated she returned the next day, that she looked pale and weak, that she could not walk, that there was a bandage that occurred during the day, and that she was gone one night. The immigration judge said the petitioner was vague regarding what actually happened with the abortion, what type of abortion it was. And the immigration judge is correct, he was vague, he did not know. And it's reasonable for him not to know. Because all I can do is close my eyes and put myself in the shoes of the petitioner, and if my wife was just forcefully taken, and abortion was forced upon her, when she came back, I would not ask what type of abortion was it, what exactly did they do to you. So it's reasonable that he was vague. Another issue that they had was, that the BIA had, was why Chen could not be sterilized. And the BIA said it was vague and inconsistent. But the petitioner clearly states that she could not be sterilized because of a skin disease, and that's found on AR-99. That's pretty sketchy though. What kind of skin disease? You know, I mean, it doesn't, how does that really explain things? You know, frankly, Your Honor, it doesn't explain things. And, but, that was what the BIA said. So that was their reason. So I guess, how is that believable, that why a skin disease couldn't mean you could be sterilized? Maybe it was a skin disease, something with her bandage, that they didn't want to take the chance of doing the forced sterilization because she may die. The document is not specific, but it does say a skin disease. And the fact that it's not specific, leads more to the fact why Chen wouldn't know. Because it wasn't something that was ongoing with her. Chen didn't really have any knowledge of a skin disease. Skin disease, that's what the doctors who were going to perform the forced sterilization told him. So that's what he went with. Another issue the BIA had was the meeting with the parents. Actually, this was more, excuse me, more immigration judge. The meeting with the parents on the day of the sterilization notice. The immigration judge found it implausible that he could have a family meeting, and then two days later, he would know the details of how he'd be smuggled out of the country. But the fact of the matter is, he never said he knew all the details. The immigration record clearly says that he was told by his parents of the existence of the smuggler two days later. Not that he knew all the details. The immigration judge used the term, all the details, but he simply said he knew the existence of the smuggler. And frankly, it is plausible that, and of course this is my own speculation and conjecture and personal opinion, but there's a lot of people who get smuggled out of the PRC. So in my opinion, it is plausible that you can certainly get information from a smuggler within two days of trying to find that information. The fact that it can be done in two days indicates to me that it can be done with great ease, which I find hard to believe. I understand, Your Honor. And like I said, I guess it's my own personal opinion, but what I've seen from my clients and my clients from China, they all are smuggled out by smugglers. They call them snakeheads. And frankly, it seems to be very common. I certainly don't have statistics on it, but. And Your Honor, just moving along a little bit because I'm starting to run out of time here. One of the other issues, I'm going to move on to the documents now, Your Honors. The, we introduced eight documents. There was a notice to appear, and that was issued in June of 2009, and there was an abortion certificate, an infectious disease certificate, a sterilization notice, and then three affidavits from the father, the mother, and the wife, and then lastly, the country reports. The immigration judge had an issue with the chain of custody, and that was his reasoning for discrediting all the documents. He gave no other reason whatsoever in his opinion for discrediting the documents other than chain of custody. At the hearing, the chain of custody was explained by the respondents, and one of the individuals in the chain of custody was the uncle. The uncle did not come to testify. The immigration judge took issue with that and discredited all the documents. That is in clear contradiction of Marianka V. Holder, which says chain of custody cannot be the sole reason for discrediting documents. Right, but if that isn't just the chain of custody, that's the very curious situation when the person who could answer the question is local in the city where the hearing's taking place and doesn't come. Yes. I mean, that sort of left off the page for me when I was reading these. We read a lot of stuff in this job, and that one just left off the page. Why isn't that a fair consideration? Well, it is a somewhat fair consideration, but it was explained, at least from the attorney to the judge, why he was not there. And during closing argument, the attorney... The judge didn't have to believe that, did he? Certainly not, Your Honor. And the attorney actually requested a continuance once realizing it was very important to the court, a continuance to allow the witness to come and testify. So the only reason the witness was not called, or I can tell you that firsthand, the only reason the witness was not called is because the attorney, the trial attorney, was relying on Marianka V. Holder, and that he knew he could somewhat establish a chain of custody and that there was no other issues with the documents. So and clearly, the immigration judge and the Board of Immigration Appeals, and as did Your Honor, is drawing a negative credibility inference from not calling the witness. Well, I think it's a large question, is what I'm saying. I'm not drawing any inferences. I'm sorry, Your Honor. Yeah, that's not my job. I just review. And Your Honor's going to the next documents. We have the abortion certificate and the infectious disease certificate. So the BIA, one of their issues was they were photocopies, not originals. However, originals were brought to court, and that's in accordance with the court practice manual. And the originals were shown to the judge and shown to everybody. So they were there in court. So I don't think that is a valid reason to discard the documents. And Your Honor, the BIA also, Your Honors, excuse me, the BIA also brought up the chain of custody as well with the abortion certificate and the infectious disease certificate. But once again, they say vague as to how the respondent, excuse me, the petitioner received the photocopies. Once again, they were not photocopies. The infectious disease certificate, the board said was unreliable because number one, it was prepared three days after the abortion. But the infectious disease certificate was prepared in response to the fact that Shannon could not undergo sterilization, which was three days after the abortion. There was no connection between the infectious disease certificate and the actual abortion. The connection is between the infectious disease certificate and the fact that she couldn't be sterilized on the 28th. So it's logical. And the BIA clearly misconstrued that. And the BIA also said it's a vague description and the doctor's name is ineligible, excuse me, not ineligible, illegible. But of course, once again, this is personal opinion. Doctor's writing is known to be illegible. Lastly, Your Honor, with the documents, or not lastly, but two minutes left, the notice to appear for sterilization, a sterilization notice, the BIA discredited that because they said it was unsigned, it was a photocopy, it was prepared the same day as the infectious disease certificate, and it was not authenticated. Now going back to being prepared the same day, that would be logical as well, Your Honor, because the only reason Petitioner was required to appear for sterilization is because his wife could not be sterilized. And that all happened on the same day. So that's completely logical. And the BIA also quotes matter of HLH and ZYZ indicating why this document is unreliable. And that case specifically talks about the birth, doesn't talk about birth control bureaus, it talks about village committees, how village committees have no power. And documents of village committees shouldn't be considered. But this document is not from a village committee. It's from the birth control bureau. So the BIA was incorrect on that as well. And the last piece of evidence would be the Department of State Country Reports. And both the judge and the BIA notified, indicated that the implementation of the one-child policy varies. And the Board of Immigration Appeals also quoted their own precedent, matter of JWS, which indicates in the Fujian province that it's lax and uneven how they implement this policy. But the board clearly ignored the actual Department of State Country Reports, which says that the Fujian province uses unspecified remedial measures. And also this court in Ling Tao Lin v. Holder and Ling Feng Ling v. Mukasey, and those were in 2010 and 2008, after this BIA decision, has specifically said in the Fujian province that the one-child policy is enforced with special rigor. And I believe my time is up. Thank you, Mr. Berman. You've got some time remaining. Good morning. I'm Stephen Elliott, representing the Attorney General. The petition for review should be denied. Both the immigration judge and the Board of Immigration Appeals reasonably concluded that the petitioner failed to credibly establish his eligibility for asylum with holding of removal and cap protection. After reviewing the totality of the evidence, the immigration judge identified six specific cogent factors in support of his adverse credibility holding. Specifically, the immigration judge identified two inconsistencies between the petitioner's testimony and his written statement, one instance in which he provided implausible testimony, and at least three episodes in which the petitioner provided vague and non-responsive answers to questions. Well, don't you think you've, I assume, were you, did you handle this below? No, I only handled the appeal. I assume you've read the record, right? Yes. Some of the problems are surely translation problems. I did not read that into the, during the testimony. Do you have a specific example? It was a translator, right? Correct. Well, for example, the thing that, it's a mushed up record to be sure, but I think you make one, you make something of a point about he said he stayed with one person and then he was unclear about, as I read the record, what he was at. I am aware of the instance in which you're discussing, and the immigration judge and the board both found that, in that instance, the petitioner was providing non-responsive answers to testimony. It took at least a full page to get out that, where he stayed and who he stayed with and what this individual's name was. Sometimes it takes me more than a full page to get an answer out of a lawyer who's gone to law school and speaks English, right? I can certainly appreciate that, but I think that specific instance needs to be looked at in the entire context of the testimony. This was not just an isolated incident in which the petitioner, when asked several questions, kind of jumped around on his answer. This is a pattern that we see throughout his testimony where the petitioner could not provide any specific or detailed testimony about basically anything during the course of the merits hearing. And this is one instance that the immigration judge identified, but there are several others. I'm happy to discuss those now or we can discuss them in a few minutes when I get to that part of my presentation. Moreover, the immigration judge and the board reasonably concluded that the unauthenticated foreign documents that the petitioner provided should be provided very little weight and that they did not independently establish the petitioner's eligibility for relief or protection. But the regulations dealing with authentication, it doesn't require formal authentication. It really couldn't. Correct. So who's to say what's authentication? I mean, if you say, I promise you under oath, does that regard as authentication? Well, just to answer your question, I'd like to just briefly articulate the standard that this court has articulated in Tosse. And in that decision, it's stated that once the immigration judge makes authenticity of the document, then the petitioner himself must authenticate that document through some means. As you recognize, Your Honor, that that does not mean the formal regulations, but when authenticity becomes an issue, as it was in this case, then the petitioner must authenticate that document. And in this instance, it would have been through credible, detailed testimony about where these documents came from. And that's what the petitioner could not provide. He had no idea who this individual was, other than to say generally it was a family friend, how these documents came to this country, whether this individual was still in this country. The petitioner could not articulate how his uncle was able to coordinate these efforts. His uncle certainly did not provide an affidavit, nor did he come in during the merits hearing itself to provide testimony about where the documents came from and how he was able to obtain them. So in this instance, again, the immigration judge expressly called into question the authenticity of the petitioner's documentation. And at that point, the petitioner should have authenticated them through his own credible testimony. And he was not able to do so. As a matter of practice, should a petitioner's attorney anticipate authenticity questions for documents? Well, there are some cases I'm aware of in this circuit where they make note of the fact that the government did not object to the documents being brought into the record, and instances where then the immigration judge does not expressly call into question the authenticity of the documents during the merits hearing. But in this case... Do you know that before you get there? Well, I think, first of all, I'd like to answer that by saying that the petitioner has the burden of proof to provide credible and reliable documentation in support of his claim for relief and protection. Well, what you seem to be telling me is they don't know until they get there what's going to be challenged and what's not going to be challenged. So that's why I ask you, is it their responsibility to anticipate challenges to authenticity? I would agree with that statement, yes. Now... See, that took more than a page, I bet. I would agree with that sentiment. Now, that said, in this instance, we do have the unique circumstances where the immigration judge, during the course of the merits hearing, again, is expressly calling into question the document's authenticity. So not only did he not authenticate the documents through the regulatory procedures outlined, but also through some other means, as he is allowed to do. In this case, again, it would have been through detailed, credible testimony, which he could not provide. But he asked for a continuance to go get his uncle there, which was denied. Is that right? First, I do not read the transcript as a formal oral motion for a continuance, and certainly the immigration judge did not address it on the record. Did he not make an informal oral motion for continuance? He did mention... He did say that he could bring the uncle in. However, at no point during the administrative process did Petitioner challenge the immigration judge's... Or I should say, argue that the immigration erred in this respect by not either affirmatively granting a continuance or granting the oral motion that may have been addressed. The Petitioner did not raise this to the board, nor did he file a motion to reopen with the conclusion that the uncle may have been previously unavailable during the merits hearing, nor did he argue in a motion for reconsideration that the immigration judge committed some form of legal error by not continuing the proceedings. So, that specific question as to whether or not the immigration judge committed an error by not continuing the case to allow the uncle to testify is not presently before the court. I would like to briefly discuss the Petitioner's implausible testimony. As the panel probably understood, this formed a large basis for the adverse credibility holding that the immigration judge articulated and the board affirmed. This court in Taweeb explained that an immigration judge may properly find that a testimony lacked plausibility based only on common sense, but the immigration judge must explain that finding. That is, the board cannot... Explain that determination, and that's exactly what the immigration judge did in this case. He found it implausible that Petitioner... He found Petitioner's testimony implausible about how he was able to leave China so quickly. And he explained that by saying and discussing in detail that Petitioner's elaborate scheme... He articulated a very elaborate scheme to get out of the country. He said that he used two different safe houses. He used two different fake passports. He had two international flights. And that this was all planned, executed, and completed within under a week, if you read Petitioner's testimony in full. What the immigration judge said was, it simply is not plausible, based on common sense, that you could pull together and execute such an intricate scheme to leave the country on such short notes. You make it sound like he had to plan all these safe houses and plan the documents, but my understanding of the way the Snakehead system works is this is just a pipeline. The houses are already set up. It's just a matter of making contact with the Snakehead, who has the system in place, and you just fit right into it, and they transport you to their system. That's certainly a possible explanation, but Petitioner, first of all, could not explain... First of all, he did not provide that explanation. He did not provide any explanation for why he was able to plan and coordinate these efforts, or the smuggler was able to plan and coordinate these efforts in such short notice. And that's in stark contrast to the factual circumstances in Taweeb, where this court acknowledged that the petitioner said that she was able to leave Ethiopia on such short notice because she was a flight attendant, and she was able to switch flights with another flight attendant. And she articulated this plausible explanation during the course of the merits hearing. In this case, Petitioner provided no plausible explanation as to why he was able to leave, find the smuggler, and the smuggler was able to coordinate the efforts in only a couple of days. And I should also note that a possible explanation does not compel the conclusion that this testimony was, in fact, plausible in light of the record before the court. I hear you, but certainly we can take judicial notice of it. It sounds to me like it would be pretty hard to get out of the country other than through these means that Judge Draxler suggested on any short notice. And there's no argument that he didn't get out of the country, so we're left with he got out of the country. That's correct. And again, the risk of selling out is a broken record. This court has found that an immigration judge may find that testimony is implausible based on common sense, provided there's an explanation, and that's what the immigration judge did here. I don't think you understood what I just said. It sounds to me like the only way he could do this was through these illegal trafficking. We don't have any evidence in this record of airline tickets or transfers or any of that legally. We just have his testimony of what happened. You may still prevail, but I don't know that that's your strongest argument. Well, I respectfully disagree. You think if you'd lose on this argument, you'd lose? Absolutely not, and I'd like to address some of the other factors. But I do think, and I don't think the immigration judge in any way was basing that finding on speculation or conjecture. It would have been inappropriate. This was a proper finding that that aspect was. The immigration judge gave him no room, that's for sure. I mean, didn't allow for the language difference, didn't allow for the fact that the man might not be as intelligent as the immigration judge was. Well, I think what the immigration judge did was review the testimony and the evidence before him in its totality, which is what he's instructed to do under the changes made to the INA under the REAL ID Act. And when reviewing the testimony, taking it into, taking everything into consideration, not only his responsiveness and non-responsive questions, but also his implausible testimony and the inconsistencies that we have not yet discussed. The first inconsistency that the immigration judge identified was how pregnant his wife was at the alleged, at the time of the alleged forced abortion. In his asylum statement, the petitioner unequivocally stated that she was three months pregnant. During the cross-examination, I believe, the petitioner claimed at first that she was about two months pregnant, but then later backtracked completely and acknowledged that he did not know how pregnant she was at the time of this procedure. Well, yeah, that's really not very uncommon for people not to know exactly. In fact, isn't it more the case often than not when people aren't actually sure exactly when they conceived a child? I certainly agree that there is some. Yeah, why is that an inconsistency? Well, I think you have to look at all the points on this. First, he says in his asylum statement unequivocally that she was three months pregnant. There was no maybe or about three months. Then he's saying she was about two months pregnant, and then he concedes that he doesn't know. And so there's an inconsistency not just of how pregnant she was, but whether that she was three or two months pregnant, but he didn't know at all how pregnant she was at the time of this procedure. And then it also contradicts the document in the record, which has been called the abortion certificate, which indicated that the petitioner's wife was four or five months pregnant at the time of this procedure. And so this- You're now saying that certificate is a valid certificate. It's authenticated? Well, I'm saying that the petitioner- You're relying on it, right? I'm relying on it to demonstrate that the immigration judge identified this inconsistency in the record. Was the abortion certificate one of the documents provided by the uncle through the unnamed courier? It was. Okay, so you're kind of asking us to give the documents credence when it suits you and not to give them credence when it doesn't suit you? No, I think I'm asking the panel to acknowledge the facial inconsistency on this document. Well, Judge Alito, when he was on the Third Circuit, said about two months and three months were scarcely- there was scarcely any difference. You disagree with Justice Alito, right? I do, and I think that this case is a little different in the fact that it's not just a difference between two or three months. Again, during his testimony, then he backtracked completely and said that he didn't- Completely? Two, three, or I'm not really sure what. I take it you've never been pregnant, right? That is correct. Do you have a child? I do not. Well, stick with Judge Keenan on this. I would just like to make the final point that this is an inconsistency in the record. Whether the court views it as trivial, I certainly disagree. But any inconsistency, regardless of whether it goes to the heart of the matter, may now be considered by the immigration judge. And the immigration judge took this into consideration as well as all the other factors that we've already discussed. The second inconsistency that the immigration judge identified was whether there was a physical altercation that occurred at the time that the family planning officials came to the petitioner's house. The immigration judge acknowledged there was some uncertainty on this topic. He originally stated in his asylum statement that he was beaten and kicked. Later in his testimony, originally in his testimony, he only claimed that he argued with these officials, and then later he claimed that he was hit. And the immigration judge identified this inconsistency and said it was another reason to doubt the petitioner's credibility. I see I only have a few minutes left. I'd like to discuss the allegation that the board engaged in impermissible fact-finding. I'd like to first note that this was an argument that was raised in the petitioner's brief. However, there was no specific allegations as to what facts the board allegedly impermissibly found on review. That said, the board did not conduct any sort of impermissible fact-finding. It expressly adopted and affirmed the immigration judge's decision citing matter of bravado, and it reviewed the immigration judge's adverse credibility finding under the clearly erroneous standard, which is the proper standard of review. And in doing so, the board identified the six factors or addressed the six factors that the immigration judge identified and cited to the pages in the immigration judge's decision where those factors could be located. So regarding the adverse credibility holding, there is absolutely no issue as to whether the board found facts impermissibly. Regarding the corroborating documentation and the finding that those documents should be provided very little weight, the board also found that that decision by the immigration judge was not clearly erroneous. And in doing so, agreed or found that it was not clearly erroneous because of this lack of authenticity, failure to authenticate the documentations, but also, as the immigration judge did, found that these documents had facial deficiencies as well. There was not just an issue with authenticating the documents, but also, we already discussed, there was discrepancy on the face of the abortion certificate, but also, the board acknowledged and observed the documents when in the record that they contained other deficiencies, such as the sterilization notice did not contain a signature, and the disease explanation form had an illegible signature. And the board, recognizing these facial deficiencies as well as the failure of the petitioner to authenticate the documents, found that the finding on this point was not clearly erroneous. Unless the panel has any further questions, we'll just ask that the petition be denied because the record does not compel the conclusion the petitioner was credible. Thank you. I'd like to go back to the chain of custody briefly. About three or four of the documents the petitioner actually had in his hand in China, so a good portion of the chain of custody was established. He left for China, did not take the documents with him, and then when he came to the United States, the documents were sent to him. So where the chain of custody has lapsed in terms of the uncle is how the documents actually came from China to the United States, but the petitioner was in possession of at least three of the important documents while he was in China, and he did testify to this during the chain of custody. Your Honor, Judge Motz brought up the fact that stuff gets lost in translation and that the immigration judge didn't give the petitioner a whole lot of room. And I was the attorney at that trial, and I do believe that that was the case, though that's not specifically put in any of the appeals. It does go to the reasons why some of the testimony may seem a little bit inconsistent. Of course, if you don't put it in the appeal, we're left with a record, and that's why we defer to the fact finder in most cases because we weren't there. We don't know if this person was fluent, not fluent, conferring with his lawyer on the sidelines, because nothing of that we just don't know. I understand, Your Honor. And going back to the issue of the assault, as I stated earlier, it was clear that the immigration judge did not ask him any questions that would prompt him to say he was assaulted. And it also should be noted that the immigration judge asked the first maybe 20, 30 questions, and the first half hour of questioning was done by the immigration judge. Now, going to the argument of the impermissible fact finding, what we were arguing was impermissible is the facial deficiencies that the Board of Immigration Appeals pointed out, because the immigration judge did not point them out at all. And it seems that what is happening is when the appeal was made to the Board of Immigration Appeals, Marianca Beholder was cited, and it appears that the Board of Immigration Appeals, in so many words, said, yes, we're aware of Marianca Beholder, even though they didn't mention it. But besides the chain of custody, there are all these other deficiencies with the record. And we believe that is a form of impermissible fact finding. The BIA, by regulation, is not allowed to engage in fact finding. Now, this court in Linfanlin v. Mukasey in footnote 10 said the BIA can reevaluate evidence in the record. They just can't look at new evidence. But the reevaluation in the evidence of the record, I think, is what's notable here, because it's not necessarily a reevaluation, because the immigration judge never evaluated any of these documentary evidence. He simply just said chain of custody. And what's noticeable, and you see the difference between a trial court and an appellate court, when the appellate court, the board, talks about not submitting originals. And you can clearly see from the rules that originals are not supposed to be submitted. They're supposed to be brought to court for the immigration judge to see. Your Honors, just concluding, I believe the evidence of the record is clear that the majority of the reasons that both the BIA and the immigration judge gave are, frankly, unreasonable. And we would request that the court grant the petition to review. Thank you, Mr. Berman. Thank you, Your Honors. I will come down and greet counsel and then go into the last case.
judges: William B. Traxler, Jr., Diana Gribbon Motz, Barbara Milano Keenan